UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIGUEL ANGEL MERCADO, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>CARMEL PARTNERS CONSTURCTION LLC, *et. al.*,<br><br>    Defendants. | Civil Action No. 22-cv-3083 (TSC) |

### MEMORANDUM OPINION

Plaintiffs Miguel Angel Mercado, Jery Pinto, Byron Quiroz Fajardo, Melito Quiroz, Daniel Reyes Sanchez, Nora Pineda, German Alfaro, Cesar Villafuerte, Victoriano Quiroz, Jose Emanuel Romualdo Leal, Luis Fernando Quintanilla, Lesly Cruz, and Yanira Garcia ("Plaintiffs") claim they were either underpaid or not paid at all while working on a construction project in Northeast Washington, D.C., in violation of the Fair Labor Standards Act ("FLSA") and the D.C. Code. Two defendants are in default— J&D Plumbing of DC LLC ("J&D Plumbing") and Jonathan M. Rivadeneira Chavez ("Chavez") (collectively, "Defaulting Defendants"). Plaintiffs moved for default judgment against Defaulting Defendants. Pls.' Mot. for Default J. ("Motion"), ECF No. 27. For the following reasons, the court will GRANT Plaintiffs' Motion as to Defaulting Defendants.

I.   BACKGROUND

Plaintiffs sued Defendants Carmel Partners Construction, LLC ("Carmel"), Brother's Mechanical Inc. ("BMI"), J&D Plumbing, and Chavez on October 11, 2022, alleging they violated the FLSA, the D.C. Minimum Wage Act ("DCMWA"), and the D.C. Wage Payment

and Collection Law ("DCWPCL").  Compl. ¶¶ 41–43, 55–56, 61, 68, 75–76, ECF No. 1. Plaintiffs claim they were underpaid or unpaid while working on a construction project at 1150 1st Street, NE, Washington, D.C. 20002 during the summer of 2022.  *Id.* ¶ 13.  Plaintiffs claim they were jointly employed by BMI and J&D Plumbing, and that BMI used J&D Plumbing as a subcontractor to provide labor and perform plumbing and sheet metal work on the project.  *Id.* ¶¶ 1, 14.  Chavez was the President or CEO of J&D Plumbing at all relevant times.  *Id.* ¶ 8.

Mercado alleges Defendants failed to pay him for 72 hours of work and 22.25 hours of overtime.  *Id.* ¶ 24; Mot. at 3–4.  Pinto alleges he was not paid for 120 hours of work and 51.5 hours of overtime.  Compl. ¶ 25; Mot. at 4.[1]  Fajardo alleges he was not paid for 120 hours of work and 81 hours of overtime.  Compl. ¶ 26; Mot. at 4.  Melito Quiroz alleges he was not paid for 120 hours of work and 81 hours of overtime.  Compl. ¶ 27; Mot. at 5.  Sanchez alleges he was not paid for 120 hours of work and 81 hours of overtime.  Compl. ¶ 28; Mot. at 5.[2]  Pineda alleges she was not paid for 480 hours at the appropriate minimum wage rate, including 24 hours when she was not paid at all, and 176 hours of overtime.  Compl. ¶ 29; Mot. at 5–6.[3]  Alfaro

---

[1] Where Plaintiffs' sworn declarations differ from the facts alleged in the Complaint, the court refers to the sworn declarations "except to the extent that [any] declaration seeks relief beyond that sought in the complaint."  *Sanchez v. Devashish Hosp., LLC*, 322 F.R.D. 32, 36 (D.D.C. 2017) (cleaned up); *see also Martinez v. China Boy, Inc.*, 229 F. Supp. 3d 1, 2 (D.D.C. 2016) (the court "will accept the facts recited in the complaint, but only to the extent they are supported by the motion for default judgment and accompanying declaration"), *vacated*, No. 16-cv-496-RDM, 2017 WL 9989877 (D.D.C. Nov. 21, 2017).

[2] Sanchez's declaration also seeks damages for 160 hours of work for which he was paid less than the minimum wage.  Sanchez Decl. ¶ 13, Ex. C at App.056, ECF No. 27-3; *see also* Mot. at 16 n.4.  But the Motion acknowledges that the "Complaint does not allege DCMWA minimum wage violations on behalf of Defendant Sanchez."  Mot. at 18 n.6.  Accordingly, Sanchez's declaration seeks relief beyond what is sought in the Complaint and the court will limit damages to the facts alleged in the Complaint.  *See Sanchez*, 322 F.R.D. at 36.

[3] The Complaint alleges that defendants "failed to pay [Pineda] entirely for 24 hours of work performed on the Project during the period of June 27, 2022 through June 29, 2022."  Compl.

alleges he was not paid for 72 hours of work.  Compl. ¶ 30; Mot. at 6.  Villafuerte alleges he was not paid for 24 hours of work and 176 hours of overtime.  Compl. ¶ 31; Mot. at 6.  Victoriano Quiroz alleges he was not paid for 80 hours of work and 6 hours of overtime.  Compl. ¶ 32; Mot. at 6–7.  Leal alleges he was not paid for 162 hours of work and 80.5 hours of overtime.  Compl. ¶ 33; Mot. at 7.  Quintanilla alleges he was not paid for 110 hours of work and 36 hours of overtime.  Compl. ¶ 34; Mot. at 7.  Cruz alleges she was not paid for 117 hours of work and 15.5 hours of overtime.  Compl. ¶ 35; Mot. at 7–8.[4]

All four defendants were served with the summons and Complaint in early November 2022.  ECF Nos. 5 (Affidavit of Service on J&D Plumbing), 6 (Chavez), 7 (Carmel), 8 (BMI).  Carmel and BMI filed timely answers to the Complaint.  ECF Nos. 15, 18.  Plaintiffs and BMI reached a settlement agreement which this court approved, ECF Nos. 20, 21, and Plaintiffs voluntarily dismissed their claims against BMI and Carmel, ECF No. 22.  Plaintiffs did not reach a settlement with Defaulting Defendants and instead sought to continue their suit against them.  Defaulting Defendants never answered the Complaint and have not appeared in this case.  When they failed to file a timely response to the Complaint, Plaintiffs filed a Request for Clerk's Entry of Default under Federal Rule of Civil Procedure 55(a).  ECF No. 10.  The Clerk entered default against J&D Plumbing and Chavez on December 9, 2022.  ECF No. 13.

---

¶ 29. Accordingly, Pineda's declaration—which seeks unpaid wages for 34 hours of week—seeks relief beyond that sought in the Complaint and the court will limit damages to the facts alleged in the Complaint. *See Sanchez*, 322 F.R.D. at 36; Pineda Decl. ¶ 13, Ex. C at App.066, ECF No. 27-3.

[4] Plaintiff Garcia did not submit a declaration and therefore fails to prove she is entitled "to the relief requested using detailed affidavits or documentary evidence on which the court may rely." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (internal quotation marks, citations, and alterations omitted); *see also* Compl. ¶ 36.

## II.     LEGAL STANDARD

Default judgment under Federal Rule of Civil Procedure 55(b) is appropriate where an unresponsive party halts the adversarial process. *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). In arguing for default judgment, plaintiffs "may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Id.* The court must take every well-pleaded allegation in the complaint as true because the Clerk's entry of default under Federal Rule of Procedure 55(a) deems the defendant to have admitted all well-pleaded allegations. *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001). However, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded" through "detailed affidavits or documentary evidence." *Id.*

## III.     ANALYSIS

**A.     <u>Liability</u>**

### i.     *Prompt payment claims*

Plaintiffs contend that Defaulting Defendants violated the FLSA and D.C. Code by failing to promptly pay their wages. Compl. ¶¶ 41–47 (Count 1, DCWPCL), 61–63 (Count 3, FLSA). Courts have interpreted the FLSA to contain an implicit "requirement that wage payments due to employees must be paid promptly and at regular intervals." *Perez v. C.R. Calderon Constr., Inc.*, 221 F. Supp. 3d 115, 138 (D.D.C. 2016) (citing Circuit cases). Similarly, the DCWPCL requires employers to pay employees "on regular paydays designated in advance by the employer and at least twice during each calendar month." D.C. Code § 32-1302. If an employee quits or resigns, the employer must pay the wages that employee is owed "upon the next regular payday or within 7 days from the date of quitting or resigning, whichever is earlier." *Id.* § 32-1303(2). An employer who fails to pay wages promptly following termination is liable to the employee for liquidated damages equal to 10% of the unpaid wage for each working day

the payment is late, up to triple the amount of the delayed payment. *Mills v. Anadolu Agency NA, Inc.*, 105 F.4th 388, 393 (D.C. Cir. 2024) (citing D.C. Code § 32-1303(4)).

To show that they are entitled to relief on their prompt payment claims, Plaintiffs must first establish that they were employed by Defaulting Defendants, *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5 (D.D.C. 2010), and not on an independent contractor basis, which is not covered by the FLSA, *Ruffin v. New Destination, LLC*, 800 F. Supp. 2d 262, 268 (D.D.C. 2011). The DCWPCL defines covered employers and employees "exceptionally broadly" and draws its definition from the FLSA. *Mills*, 105 F.4th at 394. In determining whether an employment relationship exists, the court looks to whether one party has the power to hire or fire the other, supervises and controls their work schedules or conditions of employment, and determines the rate and method of payment. *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001).

Plaintiffs submitted declarations stating that each began working for Chavez after he described the work they would perform and the rates they would be paid. Mercado Decl. ¶¶ 3–4, ECF No. 27-3; Pinto Decl. ¶¶ 3–4; Fajardo Decl. ¶¶ 3–4; M. Quiroz Decl. ¶¶ 3–4; Sanchez Decl. ¶¶ 3–4; Pineda Decl. ¶¶ 3–4; Alfaro Decl. ¶¶ 3–4; Villafuerte Decl. ¶¶ 3–4; V. Quiroz Decl. ¶¶ 3–4; Leal Decl. ¶¶ 3–4; Quintanilla Decl. ¶¶ 3–4; Cruz Decl. ¶¶ 3–4. Each Plaintiff states that Chavez was responsible for hiring and firing J&D Plumbing employees, set their wage rates, controlled their work schedules, supervised and directed their work at the construction site, and provided equipment from BMI they needed to perform their job duties. Mercado Decl. ¶¶ 6, 8; Pinto Decl. ¶¶ 6, 8; Fajardo Decl. ¶¶ 6, 8; M. Quiroz Decl. ¶¶ 6, 8; Sanchez Decl. ¶¶ 6, 8; Pineda Decl. ¶¶ 6, 8; Alfaro Decl. ¶¶ 6, 8; Villafuerte Decl. ¶¶ 6, 8; V. Quiroz Decl. ¶¶ 6, 8; Leal Decl. ¶¶ 6, 8; Quintanilla Decl. ¶¶ 6, 8; Cruz Decl. ¶¶ 6, 8. Each Plaintiff also submitted time sheets—

with "BMI" printed at the top—that listed Chavez as their "supervisor/foreman." Mercado Decl. ¶ 9, Ex. A at App.009; Pinto Decl. ¶ 9, Ex. A at App.020; Fajardo Decl. ¶ 9, Ex. A at App.031; M. Quiroz Decl. ¶ 9, Ex. A at App.041; Sanchez Decl. ¶ 9, Ex. A at App.052; Pineda Decl. ¶ 9, Ex. A at App.062; Alfaro Decl. ¶ 9, Ex. A at App.071; Villafuerte Decl. ¶ 9, Ex. A at App.081; V. Quiroz Decl. ¶ 9, Ex. A at App.091; Leal Decl. ¶ 9, Ex. A at App.100; Quintanilla Decl. ¶ 9, Ex. A at App.111; Cruz Decl. ¶ 9, Ex. A at App.124. And Plaintiffs state that when they were paid, they were paid by J&D Plumbing and Chavez. Mercado Decl. ¶¶ 11–12; Pinto Decl. ¶¶ 11–12; Fajardo Decl. ¶¶ 11–12; M. Quiroz Decl. ¶¶ 11–12; Sanchez Decl. ¶¶ 11–12; Pineda Decl. ¶¶ 11–12; Alfaro Decl. ¶ 11; Villafuerte Decl. ¶¶ 11–12; V. Quiroz Decl. ¶¶ 10–11; Leal Decl. ¶¶ 11–12; Quintanilla Decl. ¶¶ 11–13; Cruz Decl. ¶¶ 11–12. One Plaintiff also stated that he was "paid by check by J&D Plumbing, and by personal check of Chavez for some of the work" he performed, and attached a paycheck signed by Chavez. Quintanilla Decl. ¶ 12, Ex. C at App.115. Taken as true, these declarations suffice to show that Chavez and J&D Plumbing employed Plaintiffs.

Having established an employment relationship with Defaulting Defendants, Plaintiffs need only show that wage payments were not made promptly at regular intervals to establish that they are entitled to relief on their prompt payment claims. *See Perez*, 221 F. Supp. 3d at 139–40. Plaintiffs sufficiently allege they were not paid promptly. Their declarations—signed in September and October 2023—indicate that Defaulting Defendants have not paid them for work they completed in 2022. Compl. ¶¶ 24–35, 42–43, 61; Mercado Decl. ¶¶ 12–13; Pinto Decl. ¶¶ 12–13; Fajardo Decl. ¶¶ 12–13; M. Quiroz Decl. ¶¶ 12–13; Sanchez Decl. ¶¶ 12–13; Pineda ¶¶ 12–13; Alfaro Decl. ¶¶ 11–12; Villafuerte Decl. ¶¶ 12–13; V. Quiroz Decl. ¶¶ 11–12; Leal Decl. ¶¶ 12–13; Quintanilla Decl. ¶¶ 13–14; Cruz Decl. ¶¶ 12–13. Taking those allegations as

true, the court finds that Defaulting Defendants are liable to Plaintiffs under the FLSA and D.C. law.

    *ii.*    <u>Minimum wage claims</u>

Plaintiffs also contend that Defendants violated the FLSA and DCMWA by failing to pay Plaintiff Pineda a minimum wage. Compl. ¶¶ 67–68 (Count 4, DCMWA), 73, 75–76 (Count 5, FLSA). The FLSA requires that an employer pay each employee "not less than the minimum wage," 29 U.S.C. § 206(b), of $7.25 per hour, *id.* § 206(a)(1)(C). The DCMWA required a minimum wage of $15.20 per hour beginning July 1, 2021, and $16.10 beginning July 1, 2022. D.C. Code § 32-1003(a)(5)(A)(v)–(6)(A); *see also* Mot. at 19 n.7.[5]

Plaintiffs have established an employment relationship with Defaulting Defendants, and Pineda need only prove that she was not paid the relevant minimum wage. She has done so by declaring that her wage rate was $14.00 per hour for her work on the project from April to July 2022. Pineda Decl. ¶¶ 7, 13; *see also* Compl. ¶¶ 29, 64–67; Mot. at 5–6, 18–19. Because Defaulting Defendants have not participated in this litigation, Pineda has been unable to develop the record to include official records of her working hours and payment history. In this context, her declaration suffices to establish liability for her minimum wage claims. *See Saravia v. Yuan Profit, Inc.*, No. 20-cv-232-RDM, 2023 WL 2585675, at *4–5 (D.D.C. Mar. 17, 2023) (using declaration and detailed financial schedules to calculate wages owed under DCMWA).

---

[5] Defaulting Defendants were required to pay the District of Columbia's higher minimum wage. *See Zaldaña v. Morrogh*, No. 20-cv-3810-RC, 2022 WL 203471, at *2 (D.D.C. Jan. 24, 2022) ("[A]n employee's 'regular hourly rate' must not be lower than the applicable state or local minimum rate." (quoting 29 C.F.R. § 778.5)).

   *iii.* <u>Overtime claims</u>

  Plaintiffs finally contend that Defaulting Defendants violated the overtime provisions of the FLSA and DCMWA.  Compl. ¶ 55 (Count 2).  The FLSA mandates overtime payments at a rate of one and one-half times an employee's regular hourly wage for hours worked in excess of 40 hours per week.  *Amaya v. Logo Enterprises, LLC*, 251 F. Supp. 3d 196, 199–200 (D.D.C. 2017) (citing 29 U.S.C. § 207(a)).  D.C. law tracks the FLSA's overtime provisions and likewise guarantees covered employees overtime pay equal to one and one-half times their regular hourly wage for each hour they work per week in excess of a 40-hour workweek.  *Seo v. Oh*, 573 F. Supp. 3d 277, 281–82 (D.D.C. 2021) (citing D.C. Code § 32-1003(c)).  Plaintiffs have established they are covered employees for the reasons explained above.

  All Plaintiffs save Alfaro state that they worked more than forty hours per week but were not paid the mandated overtime rate.  Mercado Decl. ¶¶ 11, 13 (22.25 hours overtime); Pinto Decl. ¶¶ 11, 13 (51.5 hours overtime); Fajardo Decl. ¶¶ 11, 13 (81 hours overtime); M. Quiroz Decl. ¶¶ 11, 13 (81 hours overtime); Sanchez Decl. ¶¶ 11, 13 (81 hours overtime); Pineda Decl. ¶¶ 11, 13 (176 hours overtime); Villafuerte Decl. ¶¶ 11, 13 (176 hours overtime); V. Quiroz Decl. ¶¶ 10, 12 (6 hours overtime); Leal Decl. ¶¶ 11, 13 (80.5 hours overtime); Quintanilla Decl. ¶¶ 11, 14 (36 hours overtime); Cruz Decl. ¶¶ 11, 13 (15.5 hours overtime).  These declarations suffice to establish Defaulting Defendants' liability for Plaintiffs' overtime claims.  *See Amaya*, 251 F. Supp. 3d at 200 (affidavit summarizing hours plaintiff worked and attesting that employer failed to pay legally mandated overtime wage sufficient to establish liability).

   *iv.* <u>Joint and several liability</u>

  Plaintiffs claim Defaulting Defendants are jointly and severally liable on all claims. Mot. at 13–14.  Under the FLSA and D.C. law, an employing company and employing individual—such as the President of the company—are jointly and severally liable so long as they both

constitute "employers" under the statutes. *See, e.g., Ayala v. Tito Contractors, Inc.*, 82 F. Supp. 3d 279, 288 (D.D.C. 2015); *Perez*, 221 F. Supp. 3d at 144. As explained above, both J&D Plumbing and Chavez were Plaintiffs' "employers" under the FLSA and D.C. law because they had the power to hire and fire Plaintiffs, set Plaintiffs' wages and schedules, and determined how Plaintiffs would be paid for their work. *See* Compl. ¶ 8 (alleging Chavez was the President or CEO of J&D Plumbing and controlled Plaintiffs' pay, scheduling, supervision, and their hiring and firing). Consequently, Defaulting Defendants are jointly and severally liable.

**B.    Damages**

Plaintiffs may not recover duplicative damages under the FLSA and D.C. law. *See Sanchez*, 322 F.R.D. at 38. Accordingly, they seek damages under D.C. wage-and-hour laws, which are "more generous to employees," rather than the FLSA. *Sanchez*, 322 F.R.D. at 38 (analyzing damages claim under D.C. law); Mot. at 18–19. D.C. law permits plaintiffs to recover "unpaid wages, statutory penalties, and an additional amount as liquidated damages." D.C. Code § 32-1012(b)(1). Plaintiffs have submitted declarations detailing their unpaid base and overtime hours worked as well as a Summary of Damages in support of their request for damages, which the court independently calculates below. *See* Summ. of Damages, ECF No. 27-2. The calculations below subtract the amount Plaintiffs have already received through their settlement with Carmel and BMI because D.C. law does not permit Plaintiffs to recover "any amount already recovered by an employee." D.C. Code § 32-1308(a)(1)(B).[6] Plaintiffs also

---

[6] Plaintiffs' settlement with Carmel and BMI totaled $115,548.98 and included the total amount of back wages owed and two times that amount in liquidated damages. The settlement amount did not cover the maximum amount of liquidated damages, or attorneys' fees or costs. Mot. at 9 n.2; Summ. of Damages at 2.

seek liquidated damages in an amount equal to treble their unpaid wages. D.C. Code § 32-1012(b)(1).

**Plaintiff Mercado** is owed $2,088.00 for 72 hours of unpaid work and $322.63 for 22.25 hours of underpaid overtime. Mot. at 16; Mercado Decl. ¶ 7 ($29.00 hourly wage). Mercado is therefore owed $2,410.63 in unpaid wages, before subtracting any amount awarded by settlement. Summ. of Damages at 1. Mercado is also owed $7,231.89 in liquidated damages. *Id.* (3x unpaid wages). Mercado is therefore owed a total of $9,642.52 minus the $7,231.88 he received from Plaintiffs' settlement, or $2,410.64 in total damages. *Id.* at 2.

**Plaintiff Pinto** is owed $2,520.00 for 120 hours of unpaid work and $824.25 for 51.5 hours of underpaid overtime. Mot. at 16; Pinto Decl. ¶ 7 ($21.00 hourly wage); *id.* Ex. C at App.024. Pinto is therefore owed $3,344.25 in unpaid wages, before subtracting any amount awarded by settlement. Summ. of Damages at 1. Pinto is also owed $10,032.75 in liquidated damages. *Id.* Pinto is therefore owed a total of $13,377.00 minus the $10,032.75 he received from Plaintiffs' settlement, or $3,344.25 in total damages. *Id.* at 2.

**Plaintiff Fajardo** is owed $2,520.00 for 120 hours of unpaid work and $1,753.50 for 81 hours of underpaid overtime. Mot. at 16; Fajardo Decl. ¶ 7 ($21.00 hourly wage); *id.* Ex. C at App.034. Fajardo is therefore owed $4,273.50 in unpaid wages, before subtracting any amount awarded by settlement. Summ. of Damages at 1. Fajardo is also owed $12,820.50 in liquidated damages. *Id.* Fajardo is therefore owed a total of $17,094.00 minus the $12,820.50 he received from Plaintiffs' settlement, or $4,273.50 in total damages. *Id.* at 2.

**Plaintiff Melito Quiroz** is owed $2,520.00 for 120 hours of unpaid work and $1,753.50 for 81 hours of underpaid overtime. Mot. at 16; M. Quiroz Decl. ¶ 7 ($21.00 hourly wage); *id.* Ex. C at App.045. Quiroz is therefore owed $4,273.50 in unpaid wages, before subtracting any

amount awarded by settlement.  Summ. of Damages at 1.  Quiroz is also owed $12,820.50 in liquidated damages.  *Id.*  Quiroz is therefore owed a total of $17,094.00 minus the $12,820.50 he received from Plaintiffs' settlement, or $4,273.50 in total damages.  *Id.* at 2.

**Plaintiff Sanchez** is owed $1,920.00 for 120 hours of unpaid work and $1,336.00 for 81 hours of underpaid overtime.  Sanchez Decl. ¶ 7 ($16.00 hourly wage); *id.* Ex. C at App.056.[7] Sanchez is therefore owed $3,256.00 in unpaid wages, before subtracting any amount awarded by settlement.  Sanchez is also owed $9,768.00 in liquidated damages.  Sanchez is therefore owed a total of $13,024.00 minus the $9,845.25 he received from Plaintiffs' settlement, or $3,178.75 in total damages.  Summ. of Damages at 2.

**Plaintiff Pineda** is owed $912.00 for the 480 hours of work for which she was paid less than the minimum wage, including 24 hours of unpaid work, and $1,548.80 for 176 hours of underpaid overtime.  Mot. at 17; Pineda Decl. ¶ 7 ($15.20 minimum wage used instead of Plaintiff's $14.00 hourly wage); *id.* Ex. C at App.066.[8]  Because Pineda was paid less than D.C.'s statutory minimum wage for the entirety of her work on the project and established Defaulting Defendants' liability for this violation, the court has applied the correct minimum

---

[7] The court's calculations differ from Plaintiffs' because Sanchez's declaration also seeks damages for 160 hours of work for which he was paid less than the minimum wage.  *See* Sanchez Decl. ¶ 13, Ex. C at App.056.  Because the Complaint did not allege minimum wage violations on Sanchez's behalf, the court applies Sanchez's stated $16.00 per hour wage rather than the statutory rate of $16.10 required for the month of July 2022 during which Sanchez worked for 10¢ less than the minimum wage.

[8] The court's calculations differ from Plaintiffs' because Pineda's declaration seeks unpaid wages for 34 hours of work during the week of June 28 through July 1, 2022, but the Complaint alleged that defendants "failed to pay [Pineda] entirely for 24 hours of work performed . . . during the period of June 27, 2022 through June 29, 2022."  Compl. ¶ 29; *cf.* Pineda Decl. ¶¶ 10–13, Ex. B at App.064 (punch card showing approximately 34 hours worked through July 1, 2022).  Damages are limited to the Complaint's allegations.  *See Sanchez*, 322 F.R.D. at 36.

wage of $15.20 per hour for Pineda's work performed between April and June 2022. D.C. Code § 32-1003(a)(5)(A)(v)–(6)(A). Pineda is therefore owed $2,460.80 in unpaid wages, before subtracting any amount awarded by settlement. Pineda is also owed $7,382.40 in liquidated damages. Pineda is therefore owed a total of $9,843.20 minus the $7,861.35 she received from Plaintiffs' settlement, or $1,981.85 in total damages. Summ. of Damages at 2.

**Plaintiff Alfaro** is owed $1,800.00 for 72 hours of unpaid work. Mot. at 17; Alfaro Decl. ¶ 7 ($25.00 hourly wage); *id.* Ex. C at App.075. Alfaro is also owed $5,400.00 in liquidated damages. Alfaro is therefore owed a total of $7,200.00 minus the $5,400.00 he received from Plaintiffs' settlement, or $1,800.00 in total damages. Summ. of Damages at 2.

**Plaintiff Villafuerte** is owed $552.00 for 24 hours of unpaid work and $2,024.00 for 176 hours of underpaid overtime. Mot. at 17; Villafuerte Decl. ¶ 7 ($23.00 hourly wage); *id.* Ex. C at App.085.[9] Villafuerte is therefore owed $2,576.00 in unpaid wages, before subtracting any amount awarded by settlement. Villafuerte is also owed $7,728.00 in liquidated damages. Villafuerte is therefore owed a total of $10,304.00 minus the $8,280.00 he received from Plaintiffs' settlement, or $2,024.00 in total damages. Summ. of Damages at 2.

**Plaintiff Victoriano Quiroz** is owed $1,680.00 for 80 hours of unpaid work and $189.00 for 6 hours of underpaid overtime. Mot. at 17; V. Quiroz Decl. ¶ 7 ($21.00 hourly wage); *id.* Ex. B at App.093. Quiroz is therefore owed $1,869.00 in unpaid wages, before subtracting any amount awarded by settlement. Summ. of Damages at 1. Quiroz is also owed $5,607.00 in

---

[9] The court's calculations again differ from Plaintiffs' because Villafuerte's declaration seeks unpaid wages for 32 hours of work during the week of June 28 through July 2, 2022, but the Complaint alleged that defendants "failed to pay [Villafuerte] entirely for 24 hours of work performed . . . during the period of June 27, 2022 through June 29, 2022." Compl. ¶ 31; *cf.* Villafuerte Decl. ¶¶ 13(b), Ex. B at App.083 (punch card showing approximately 32 hours worked through July 1, 2022). Damages are limited to the Complaint's allegations. *See Sanchez*, 322 F.R.D. at 36.

liquidated damages. *Id.* Quiroz is therefore owed a total of $7,476.00 minus the $5,607.00 he received from Plaintiffs' settlement, or $1,869.00 in total damages. *Id.* at 2.

**Plaintiff Leal** is owed $3,726.00 for 162 hours of unpaid work and $1,995.25 for 80.5 hours of underpaid overtime. Mot. at 17; Leal Decl. ¶ 7 ($23.00 hourly wage); *id.* Ex. C at App.104.[10] Leal is therefore owed $5,721.25 in unpaid wages, before subtracting any amount awarded by settlement. Leal is also owed $17,163.75 in liquidated damages. Leal is therefore owed a total of $22,885.00 minus the $17,802.00 he received from Plaintiffs' settlement, or $5,083.00 in total damages. Summ. of Damages at 2.

**Plaintiff Quintanilla** is owed $2,640.00 for 110 hours of unpaid work and $768.00 for 36 hours of underpaid overtime. Mot. at 17; Quintanilla Decl. ¶ 7 ($24.00 hourly wage); *id.* Ex. D at App.117. Quintanilla is therefore owed $3,408.00 in unpaid wages, before subtracting any amount awarded by settlement. Summ. of Damages at 1. Quintanilla is also owed $10,224.00 in liquidated damages. *Id.* Quintanilla is therefore owed a total of $13,632.00 minus the $10,224.00 he received from Plaintiffs' settlement, or $3,408.00 in total damages. *Id.* at 2.

**Plaintiff Cruz** is owed $2,223.00 for 117 hours of unpaid work and $318.25 for 15.5 hours of underpaid overtime. Mot. at 17; Cruz Decl. ¶ 7 ($19.00 hourly wage); *id.* Ex. C at App.128. Cruz is therefore owed $2,541.25 in unpaid wages, before subtracting any amount awarded by settlement. Summ. of Damages at 1. Cruz is also owed $7,623.75 in liquidated damages. *Id.* Cruz is therefore owed a total of $10,165.00 minus the $7,623.75 she received from Plaintiffs' settlement, or $2,541.25 in total damages. *Id.* at 2.

---

[10] The court's calculations differ from Plaintiffs' because Leal's spreadsheet appears to include a miscalculation in the overtime owed for the period between May 24 and May 30, 2022. Rather than $396.75 owed, Leal's declaration indicates $184.00 is owed for this period. *See* Leal Decl. ¶ 13(a).

In total, Plaintiffs are entitled to $36,187.74 in unpaid wages and liquidated damages from Defaulting Defendants.

C.     **Attorney's Fees and Costs**

D.C. law also permits plaintiffs to recover "costs, including attorney's fees computed pursuant to the [*Laffey*] matrix approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and updated to account for the current market hourly rates for attorney's services." D.C. Code § 32-1308(b)(1). Plaintiffs are therefore entitled to collect attorneys' fees and costs in accordance with the affidavit and evidence they submitted and the *Laffey* matrix. *See Serrano v. Chicken-Out Inc.*, 209 F. Supp. 3d 179, 195 (D.D.C. 2016); *see also Sanchez*, 322 F.R.D. at 39–40. Plaintiffs support their request for costs and attorneys' fees with an affidavit from counsel, which provides that one partner (approximately ten years out of law school) and one associate (approximately three years out of law school) worked on the matter for a reasonable total of 25.5 hours— 5.5 hours on pleadings, 12 hours on motions, and 4 hours on case development and administration. Aff. of Att'ys' Fees ¶ 3, Ex. A at App.132, ECF No. 27-3. The time narratives clarify that Plaintiffs do not seek attorneys' fees or costs associated with work pertaining only to non-Defaulting Defendants Carmel or BMI. *Id.*

Applying the *Laffey* matrix, Plaintiffs request $733 per hour for the partner's time and $413 per hour for the associate's time for a total of $12,531.50. *Id.* ¶ 8. Under D.C. law, plaintiffs are entitled to attorneys' fees under the *Laffey* matrix "at the time the determination is made," D.C. Code § 32-1308(b)(1), which is currently $777 per hour for the partner and $437 for the associate, *see Laffey Matrix*, www.laffeymatrix.com/see.html (last visited Sept. 20, 2024). Plaintiffs are therefore entitled to $13,268.50 in attorneys' fees. The affidavit also provides for $785 in routine legal costs—$400 for the filing fee and $385 for service of process. Aff. of Att'ys' Fees ¶¶ 6–8, Ex. B at App.134–137 (invoices from process server). The court will

deduct $205 in fees for service on Carmel and BMI, but otherwise finds these costs reasonable. *Id.* at App. 136–137.  Plaintiffs are therefore entitled to $13,268.50 in attorneys' fees and $580 in costs that they reasonably request, for a total of $13,848.50.

*       *       *

In sum, after subtracting the amount they recovered from their settlement, Plaintiffs are entitled to recover $36,187.74 in unpaid wages and liquidated damages and $13,848.50 in attorneys' fees and costs.  Plaintiffs are therefore entitled to default judgment in the amount of $50,036.24, plus post-judgment interest as provided in 28 U.S.C. § 1961.

## IV.   CONCLUSION

The court will GRANT Plaintiffs' motion for default judgment as to J&D Plumbing of DC LLC and Jonathan M. Rivadeneira Chavez.  Plaintiffs are entitled to default judgment and a monetary sum of $50,036.24, plus post-judgment interest, against these jointly and severally liable Defaulting Defendants.  An Order will accompany this Opinion.

Date: September 20, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge